UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

GULFSIDE CASINO PARTNERSHIP                                                              Plaintiff,

v.                                                                              Civil Action No. 3:20-cv-34-DJH

CHURCHILL DOWNS INCORPORATED,                                                  Defendant.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This is a dispute over premium tickets to thoroughbred horse racing events, including the Kentucky Derby and Kentucky Oaks, at the Churchill Downs Racetrack in Louisville.  In 2012, Plaintiff Gulfside Casino Partnership and Defendant Churchill Downs Incorporated (CDI) entered into a license agreement that permitted Gulfside to purchase designated seats at Churchill Downs Racetrack for the following twenty-two years.  (*See* D.N. 1-1, PageID # 17)  Gulfside asserts that CDI breached the contract and its implied duty of good faith and fair dealing, violated the Kentucky Consumer Protection Act, and will be unjustly enriched by these actions.  (D.N. 1, PageID # 10–13)  CDI moves to dismiss Gulfside's complaint.  (D.N. 7, PageID # 46)  For the reasons explained below, the Court will grant CDI's motion.

**I.**

The Court "take[s] the facts only from the complaint, accepting them as true as [it] must do in reviewing a 12(b)(6) motion."  *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 757 (6th Cir. 2020) (citing Fed R. Civ P. 12(b)(6)).  In August 2004, CDI entered into a Personal Seat License Agreement (PSL) with Frank and Sonia Cain.  (D.N. 1, PageID # 2)  The PSL gave the Cains the right and obligation to purchase eight seats on "Millionaires Row 6," the sixth floor at Churchill Downs Racetrack, for a thirty-year term.  (*Id.*, PageID # 2-3; *see* D.N. 1-1, PageID # 17–19)  These

1

eight seats—"Row 6, Table B04, Seats 1-8" (*id*., PageID # 5)—were located along the window, overlooking the finish line. (*Id*., PageID # 3) In 2012, after Mrs. Cain passed away, Mr. Cain decided to sell his rights for the remaining twenty-two years, and Gulfside purchased the PSL from him for $300,000. (*Id.*, PageID # 3–4)

> Section 8(a) of the PSL provides:
>
>> Damage or Destruction; Other Cause [:]
>> In the event of any damage to or destruction of the Seats or the surrounding areas ("Casualty Damage") or construction at Churchill Downs Racetrack, reconfiguration of seating or any other cause (collectively, "Other Cause") which renders the seats unusable or otherwise unsuitable for purposes of this Agreement, as determined in the sole discretion of Licensor, and, in such event, which Casualty Damage or Other Cause was not caused by the Licensee or any of its guests or invitees, Licensor may, without any breach of this Agreement and without any further obligation to Licensee, at its option either:
>>     (i) relocate to a comparable location (as determined by Licensor) the seats for which Licensee has a right to purchase tickets under the Personal Seat License; or
>>     (ii) terminate this Agreement as of the date of such Casualty Damage or Other Cause, and refund to Licensee a prorated portion (as determined by Licensor) of the Licensee Fee. (D.N. 1-1, PageID # 22)

In November 2019, CDI informed Gulfside that it was renovating Millionaires Row and that because of the "entirely new floorplan and table configuration . . . the tables covered by [the] PSL [would] not be available for purchase." (D.N. 1, PageID # 6) CDI offered Gulfside the option of selecting replacement seats on the newly renovated sixth floor, of which Gulfside could choose the location and number. (*Id*., PageID #7) The new seating would cost $10,000 per person, whereas Gulfside had previously paid between $1,330 and $1,968. (*Id*., PageID # 8) Alternatively, CDI offered to terminate the contract and pay Gulfside a termination fee of $35,000. (*Id*., PageID # 9)

2

Gulfside asserts four claims: breach of contract, breach of the implied duty of good faith and fair dealing, violation of the Kentucky Consumer Protection Act, and unjust enrichment. (*Id.*, PageID # 10–13). CDI moved to dismiss all claims. (D.N. 7) Gulfside then moved for oral argument on the motion to dismiss (D.N. 14), which CDI opposed. (D.N. 15) The Court finds oral argument unnecessary to the resolution of this motion.

## II.

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell*, 550 U.S. at 556). Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* (citing *Bell*, 550 U.S. at 555) A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Federal Rule of Civil Procedure Rule 8 and will not withstand a motion to dismiss. *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).

In ruling on a motion to dismiss, the Court focuses primarily on the complaint but may also consider documents attached to the complaint, *see Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007), as well as "documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims." *Direct Constr. Servs., LLC v. City of Detroit, Mich.*, 820 F. App'x 417, 420 n.1 (6th Cir. 2020). For this reason, the Court will consider the PSL, which Gulfside attached to its complaint. (D.N. 1-1) Additionally, CDI attached the notice letter

and renovation plans that it sent to Gulfside in November 2019 to its motion to dismiss. (D.N. 7-1) Gulfside's complaint refers to these documents multiple times and contains allegations based on their content. (*See, e.g.*, D.N. 1, PageID # 7–8) The Court will therefore also consider the notice documents.[1]

**A.     Breach of Contract**

Gulfside asserts that CDI breached the PSL by impermissibly invoking the section 8(a) damage-or-destruction clause. (D.N. 1, PageID # 7–8) Under Kentucky law, "[t]he elements of a breach of contract are: (1) the existence of a valid contract; (2) the breach of the contract; and (3) damages or loss to plaintiff." *Southwynd, LLC v. PBI Bank, Inc.*, No. 3:13CV-00952-S, 2014 WL 2575410, at *2 (W.D. Ky. June 9, 2014) (applying Kentucky contract law to a 12(b)(6) motion to dismiss); *see Strong v. Louisville & Nashville R. Co.,* 43 S.W. 2d 11, 13 (Ky. 1931).

Gulfside claims breach of contract on three grounds. First, Gulfside alleges that "there was no damage, destruction, unforeseen event[,] or circumstance[] that caused Gulfside's seats to become unsuitable or unusable." (D.N. 1, PageID # 7) But the PSL is not so limited: as described above, *see supra* part I, section 8(a) is triggered by "any damage to or destruction of the Seats or the surrounding areas ("Casualty Damage") *or construction at Churchill Downs Racetrack, reconfiguration of seating or any other cause* (collectively, "Other Cause") which renders the seats unusable or otherwise unsuitable for purposes of this Agreement, *as determined in the sole discretion of Licensor*." (D.N. 1-1, PageID # 22) (emphasis added) Here, CDI notified Gulfside that due to construction and reconfiguration of the seating at Millionaires row, Gulfside's seats would no longer be available.[2] (*See* D.N. 7-1, PageID # 60) The attached construction plans

---

[1] Gulfside did not object to CDI's inclusion of the notice documents.
[2] Gulfside also argues that in the notice CDI "improperly attempt[ed] to apply an 'unavailable' standard." (D.N. 1, PageID # 7; *see also* D.N. 12, PageID # 82 ("[T]he Notice supplants the

clearly show that Table B04 will not exist post-renovation: the revised space will have only three "B" tables, B1-3, each with just four seats, none of which will be close to the windows. (*See* D.N. 7-1, PageID # 62) Gulfside's allegations thus conflict with the relevant documents, and "[w]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Cates v. Crystal Clear Technologies, LLC*, 874 F.3d 530, 536 (6th Cir. 2017) (quoting *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012)). Gulfside has therefore not adequately alleged breach of contract on its first ground.

Second, Gulfside claims that although "there could be numerous other 'comparable locations' for seating at Churchill Downs [Racetrack] in [a different location] . . . [CDI] has refused to offer Gulfside any 'comparable seating' option in any different location under its existing PSL Agreement." (*Id*., PageID # 8) But the PSL does not require CDI to offer Gulfside comparable seating. Instead, it gives CDI the option to either relocate Gulfside's seats to a comparable location or to terminate the agreement and refund Gulfside a prorated portion of the license fee. (*See* D.N. 1-1, PageID #22)[3] Gulfside has thus failed to adequately allege breach of contract on its second ground. *See Cates*, 874 F.3d at 536.

---

'unusable or otherwise unsuitable' standard of the Damage or Destruction Clause with an entirely new and nonexistent 'unavailable' standard.")) Although the notice does use the term "unavailable," it also specifically invokes paragraph 8(a) of the PSL. (*See* D.N. 7-1, PageID # 60 ("Pursuant to Paragraph 8(a) of your PSL, in situations like this when seats become unavailable due to construction and reconfiguration of the seating, [CDI] has the option of relocating your seats to another comparable location or terminating the PSL.")) Neither CDI's motion to dismiss nor its reply brief attempts to alter the standard set out in the PSL or apply a different standard. (*See, e.g.*, D.N. 7, PageID # 48 ("[A]s a result of the reconfiguration, the table and seats covered by the PSL Agreement will no longer exist, and therefore are 'unusable' and 'unsuitable for purposes of this Agreement.'"); D.N. 13, PageID # 107 ("Logic dictates that seats that are now unavailable are also 'unsuitable' and 'unusable' for purposes of the PSL Agreement.'")) Thus, the parties appear to agree that the paragraph 8(a) standard governs the dispute.

[3] Gulfside's complaint also suggests that the $35,000 termination fee offered by CDI is insufficient. (*See* D.N. 1, PageID # 9 ("[CDI] claims its termination fee under the Gulfside PSL Agreement is only $35,000. This is its position despite Gulfside having 15 years of the License

Finally, Gulfside asserts that CDI's interpretation of the contract terms "unusable," "unsuitable," and "comparable seating . . . could not reasonably be said to relate to any ordinary meaning of such term[s]." (D.N. 1, PageID # 9)  Gulfside's complaint does not further explain this claim, but its response clarifies that CDI interprets the terms "unusable" and "unsuitable" to mean "anything we don't want you to use," whereas "a reasonable person could understand 'unusable' to mean 'incapable of being used,' [and] 'unsuitable' to mean 'not appropriate.'"[4] (D.N. 12, PageID # 90) Notwithstanding Gulfside's characterization of CDI's interpretation, CDI clearly states that Gulfside's seats are unusable because they "no longer exist." (D.N. 7, PageID # 52; see D.N. 7-1, PageID # 60–62)  And seats that no longer exist are both "incapable of being used" and "not appropriate" for use. (D.N. 12, PageID # 90)  Since Gulfside's and CDI's interpretations of these terms thus do not appear to differ, Gulfside has not adequately alleged breach of contract on its third ground.  Gulfside's breach of contract claim must therefore be dismissed.

**B.     Breach of Implied Duty of Good Faith and Fair Dealing**

Gulfside alleges that CDI breached the PSL's implied duty of good faith and fair dealing by claiming that the renovation rendered Gulfside's seats unavailable, that there was no comparable location for the seats, and that the post-renovation seats would cost $10,000. (D.N. 1, PageID # 11)  "Under Kentucky law, every contract has an implied covenant of good faith and fair

---

Term remaining under its PSL agreement that it acquired for $300,000 just seven years ago))  But Gulfside does not dispute that it paid that $300,000 fee directly to the Cains and that the Cains purchased the PSL from CDI for $70,000. (See D.N. 7, PageID # 46–47)  Gulfside thus has not pleaded facts that allow the Court to reasonably infer that CDI's offer of $35,000 breached the PSL.  See Ashcroft, 556 U.S. at 678 (citing Bell, 550 U.S. at 556).

[4] Gulfside's response does not further explain its claim in regard to the term "comparable seating." (See D.N. 12, PageID # 90–91)  Since Gulfside has not pleaded facts to support this claim, the Court does not accept this "mere[ly] conclusory statement" as true.  Ashcroft, 556 U.S. at 678 (citing Bell, 550 U.S. at 555).

dealing." *Forsythe v. BancBoston Mortg. Corp.*, 135 F.3d 1069, 1076 (6th Cir. 1997); *see also Farmers Bank & Tr. Co. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005). This implied covenant "simply 'impose[s] on the parties . . . a duty to do everything necessary to carry' out the contract." *Harvest Homebuilders LLC v. Commonwealth Bank & Tr. Co.*, 310 S.W.3d 218, 220 (Ky. Ct. App. 2010) (quoting *De Jong v. Leitchfield Deposit Bank,* 254 S.W.3d 817, 823 (Ky. Ct. App. 2007)). Importantly, a party cannot breach these duties by "acting according to the express terms of a contract." *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997); *see also Farmers Bank*, 171 S.W.3d at 11 ("An implied covenant of good faith and fair dealing does not prevent a party from exercising its contractual rights.").

As discussed above, Gulfside has not adequately alleged that CDI breached "the express terms of [the PSL]" when it determined that the seats were unavailable and chose to terminate the PSL in response. *Big Yank*, 125 F.3d at 313 (6th Cir. 1997); *see supra* part (II)(A). As for the $10,000 seat price, although Gulfside claims that this was significantly in excess of the price CDI charged "on the open market" (D.N. 1, PageID # 10), the complaint contains no facts suggesting that this offer contravened CDI's "duty to do everything necessary to carry" out the PSL. *Harvest Homebuilders*, 310 S.W.3d at 220 (quoting *De Jong,* 254 S.W.3d at 823). Gulfside has therefore not alleged facts that allow the Court to infer that CDI violated the implied duty of good faith and fair dealing, and this claim must be dismissed. *See Ashcroft*, 556 U.S. at 662 (citing *Bell*, 550 U.S. at 556).

C.     **Violation of Kentucky Consumer Protection Act**

Gulfside alleges that CDI violated the Kentucky Consumer Protection Act because three of its actions were "unfair, false, misleading[,] and/or deceptive": asserting that the seats were unavailable, asserting that there were no comparable seats, and "asserting that seats in the identical

7

location as Gulfside's PSL Seats are $80,000." (D.N. 1, PageID # 12) The Kentucky Consumer Protection Act provides that "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property" as a result of "unfair, false, misleading, or deceptive acts or practices" has a private right of action against the seller. Ky. Rev. Stat. § 367.220, incorporating Ky. Rev. Stat. § 367.170.

Even assuming that Gulfside purchased the PSL for its "personal" use and that the PSL constitutes a good or service under the KCPA, Gulfside has not alleged how CDI's assertions that the seats were unavailable and that there were no comparable seats were unfair, false, misleading, or deceptive. (*See* D.N. 1, PageID # 12) Since Gulfside's allegations are thus "mere[ly] conclusory statements," the Court does not accept them as true. *See Ashcroft*, 556 U.S. at 662 (citing *Bell*, 550 U.S. at 555). As for the allegedly inflated ticket prices, Gulfside has not alleged that it purchased those seats or suffered any other "ascertainable loss of money or property" from the offer. Ky. Rev. Stat. § 367.220. For these reasons, Gulfside has failed to adequately allege that CDI violated the KCPA and this claim must be dismissed.

**D. Unjust Enrichment**

Gulfside asserts that CDI was unjustly enriched because it "received a benefit at the expense of Gulfside[,] as it was assured to have a purchaser for eight seats on Millionaires Row on an annual basis since entering the Gulfside PSL Agreement in 2012." (D.N. 1, PageID # 13) But "[t]he doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed." *Codell Constr. Co. v. Commonwealth of Ky.*, 566 S.W. 2d 161, 165 (citing *Ashton Contractors & Engineers, Inc. v. Arizona*, 454 P.2d 1004 (1969)); *see also HD TAD Holdings, LLC v. First Fed. Sav. Bank*, 2015 No. 2013-CA-001977-MR, 2015 WL 4598867, at *6 (Ky. Ct. App. July 31, 2015) (explaining that unjust enrichment "is available only

8

in the absence of a contract and is not designed to rescue a party from the consequences of a bad bargain"). Since CDI received the benefit that Gulfside points to pursuant to the PSL, Gulfside's unjust-enrichment claim is not viable and must be dismissed. *See Codell*, 566 S.W.2d at 165 (citing *Ashton*, 454 P.2d at 1004).

## III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) CDI's motion to dismiss (D.N. 7) is **GRANTED**. This matter is **DISMISSED** and **STRICKEN** from the Court's docket.

(2) Gulfside's motion for oral argument (D.N. 14) is **DENIED** as moot.